## E. M. W. Bar Corp. v. Hilliard

*Abraham J. Levinson*, for plaintiff.

*A. Harry Levitan*, for defendant.

WEINROTT, J., October 1, 1959.—Plaintiff corporation's complaint in equity prayed for an injunction to restrain defendants from picketing its duly licensed and lawfully operated taproom and restaurant business.

The trial chancellor filed an adjudication denying injunctive relief and dismissing plaintiff's complaint. This matter is now before our court en banc for consideration of plaintiff's exceptions to the adjudication.

Certain pertinent facts are conceded by both parties and are declared in the adjudication. Plaintiff pur-

chased a restaurant liquor license and made applica-
to transfer the same to his place of business at 1719
North 42nd Street, Philadelphia. The Pennsylvania
Liquor Control Board after hearing, approved plain-
tiff's request on December 17, 1958, notwithstanding
the fact that defendants appeared before the hearing
officer and voiced their objections. No appeal was filed
from the determination of said board.

On February 16, 1959, plaintiff commenced business
and on or about February 23 defendants in a line not
exceeding three persons began walking to and fro in
front of plaintiff's place of business near the curb line
of the 12-foot wide sidewalk. They bore placards read-
ing, "More Classrooms, less Taprooms," "Your chil-
dren will pass here to school" and "Parkside Residents,
No more taprooms here." This form of picketing con-
tinued during the hours of 8 and 10 p.m. from Monday
to Friday, and on Saturday afternoon and evening.

The question involved is very narrow. May nearby
residents peacefully picket a duly licensed and lawfully
operated taproom and restaurant in order to compel
the owner to relocate or remove his business? Defend-
ants base their right to picket on the ground that it is
a lawful exercise of the constitutional right of free
speech, and state that their purpose is to foster the
health, welfare, good race relations and reputation of
the neighborhood. Plaintiff, on the other hand, argues
that picketing can no longer be defended solely on the
the ground that is is an exercise of free speech. Plain-
tiff corporation also asserts that there is no dispute
between the parties, and that the picketing is to achieve
a purpose which is contrary to the operative policy in
this Commonwealth as declared by the Liquor Code.

Plaintiffs right to carry on a business is a valuable
property right and free access for employes and cus-
tomers to his place of business is incident to such right:
Truax v. Corrigan, 257 U. S. 312. Since this case does

not involve a labor dispute in any sense, policy considerations there applicable are not involved. Anyone who seeks to encroach upon the operation of a legitimate business must establish legal justification for his interference.

Retail liquor licenses and sales are controlled and regulated by the Liquor Code of April 12, 1951, P. L. 90, 47 PS §1-104(a). This comprehensive regulatory body of law provides:

"This Act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . ."

To implement the policy and standards set forth in the Liquor Code, the Liquor Control Board was created. It is apparent, therefore, that enactment of the code was not without due consideration of the public welfare, health, peace and morals. The Liquor Control Board which approved the transfer of the liquor license to plaintiff's business site must be presumed to have acted in good faith in the discharge of the duties imposed upon it, and is further emphasized by the absence of any appeal from its decision. Moreover, the zoning enabling act, vesting power in cities of the first class, requires, inter alia, that zoning regulations be enacted for the purpose of promoting the public health, safety, order and general welfare. The locus of plaintiff's business is zoned "A" commercial which permits the type enterprise that it conducts there.

Wherein then lies the basis for a group of people to arrogate unto themselves the power to superimpose their concept of public welfare over that which is the declared policy of this Commonwealth, and thereby deny efficacy to that declaration of policy?

Our Supreme Court in Obradovich Liquor License Case, 386 Pa. 342, held that in the transfer of a liquor license no consideration may be given to the protest of

the neighbors or property owners on the ground that the area was predominately residential, or that the license would threaten the quiet character of the neighborhood, or that children attending school would pass the place of business. The highest appellate body of this Commonwealth required that license applications be determined in strict compliance with the statutory standards laid down by the legislature.

Citizens who are of the belief that the licensing of liquor establishments is detrimental to their community are provided a remedy under the code and in it there is included machinery for a local option election to terminate the sale of alcoholic beverages in their municipality. Furthermore, they may seek the aid of the Attorney General or proceed by private action to enjoin any particular licensee who is operating his business in a manner so detrimental to the community as to constitute a nuisance.

In view of the foregoing policy considerations, defendants assume a heavy burden to sustain their action. The picketing of a one-man business by a labor union, which ostensibly has at least an economic end, has dire and sinister possibilities. See Grimaldi v. Local No. 9, 397 Pa. 1. Much more severe, however, are the consequences of picketing a duly licensed and lawfully exercised business in an effort to coerce the owner to cease operation and relocate, regardless how lofty and noble the beliefs and motives of the pickets.

The placards which defendants bore, while so general in nature as not to be deemed misleading by the trial chancellor, did not relate to the issue and could well confuse plaintiff's prospective patrons. The elimination or relocation of plaintiff's business would not provide more classrooms for the community, and we are convinced that the morals of the children who pass this lawfully operated liquor business are not more likely to be corrupted by its presence there. Lastly,

the elimination of plaintiff's taproom would not insure or prevent further businesses of the same type from coming into the Parkside area in accordance with law. The ideas disseminated had no relation to the purpose contemplated by the pickets.

Defendants' strongest position rests with their constitutional right of free speech. The question of picketing vis a vis free speech has been a vexatious one. After much apparent wrestling with the proposition of Thornhill v. Alabama, 310 U. S. 88, which seemed to equate picketing with freedom of speech, the Supreme Court emphatically declared in International Brotherhood of Teamsters v. Vogt, Inc., 354 U. S. 284, that picketing is not the legal equivalent of freedom of speech. It is clearly more than speech and has far more potential for inducing action or nonaction than the mere message the pickets convey.

While there is present an ingredient of communication, it also involves patrol of a particular locality. The very presence of a picket line may induce action or inaction of one kind or another, quite irrespective of the ideas which are being disseminated: Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O., 369 Pa. 359.

The picketing of an individual's private business establishment conducted in accordance with the laws and policies of this State cannot be tolerated under the guise of the exercise of freedom of speech. For it is axiomatic that even freedom of speech is not unlimited, and when it is practiced toward an end which could not be accomplished directly by lawful means, then its tendency and goal evade the law and must be prohibited.

The right of a lawful private enterprise certainly countervails any alleged encroachment on defendants' exercise of free speech under the facts of this case. No dispute exists between the picketing group and the

business picketed; plaintiff's business is the objective manifestation of defendants' displeasure, but forcing out of existence obtains none of the stated purposes of the picketing. Defendants' remedy is a legislative one. They may not by direct action against an individual exert their objection to the legislatively declared policy.

In labor cases, for example, the business picketed, assuming the picketing is for a legitimate union purpose, can by negotiation obtain agreement and free itself from the economic effect of the pickets. In this case, plaintiff is absolutely helpless; nothing that plaintiff could do would effect an improvement in the neighborhood or otherwise assist in accomplishing the stated purposes of defendant association. Only the closing of plaintiff's doors would appease the pickets.

The mask of freedom of speech confers no right to injure or otherwise damage another's business in this case, and any possible justification for the picketing disappears. The picketing is the result of an impudent assumption of power under the guise of the exercise of free speech and cannot be tolerated. If this defendant association decided that some other legitimate business or businesses were in its opinion socially undesirable, then it could picket those businesses with a view to removing the offenders from its area, the reduction of defendants' position carried to its logical conclusion. The unstated purpose of the picketing is to destroy plaintiff's business; the constitutional freedoms do not grant immunity to individuals to destroy the rights and property of others.

In view of the foregoing, we conclude that the right of private property and the right of an individual to rely on the established law and policy of the Commonwealth transcends the figurative right of freedom of speech on which defendants seek to support their action.

*Order*

And now, to wit, October 1, 1959, plaintiff's exceptions to the adjudication and decree nisi are sustained, and the court enters the following:

*Final Decree*

And now, to wit, October 1, 1959, it is ordered, adjudged and decreed that a permanent injunction issue, restraining defendants from picketing the premises of the E. M. W. Bar Corporation, 1718 North 42nd Street, Philadelphia.

Defendants to pay the costs.