Paxon Maymar, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellee.

Argued October 3, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John J. McCreesh, III*, with him *McCreesh & McCreesh,* for appellant.

*J. Leonard Langan,* Assistant Attorney General, with him *Alexander J. Jaffurs,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, November 27, 1973:

Paxon Maymar, Inc. (Paxon), is the lessee of the clubhouse, snack bar, restaurant, swimming pool, and associated facilities of the Paxon Hollow Country Club, a municipally owned golf course. The Marple Township Municipal Authority is the lessor of these facilities. The Township of Marple operates the golf course and pro shop.

On March 24, 1972, Paxon applied to the Pennsylvania Liquor Control Board (Board) for a restaurant liquor license to enable it to sell liquor at the leased clubhouse. On December 8, 1972, the Board refused Paxon's application. The Board concluded that (1) the grant of a license would adversely affect the welfare, peace, health and morals of the neighborhood within a radius of 500 feet and (2) the May 1971 referendum election held in the Township of Marple, in which the majority of the voting electors voted against the granting of liquor licenses to restaurants in the

Township of Marple, prevented the license from being issued to Paxon.

Paxon appealed from the Board's order to the Court of Common Pleas of Delaware County which held a hearing and affirmed the Board. This appeal followed and we reverse.

A reading of the record in this case brings quickly to mind what we stated in *Lousil, Inc. v. Liquor Control Board and City of Philadelphia,* 5 Pa. Commonwealth Ct. 33, 35, 288 A. 2d 560 (1972) : "Once again we are urged . . . to strain the construction of an Act of the General Assembly . . . ; and to do so, furthermore, with reference to a matter readily subject to amelioration by the Legislature, if that be its will."

In *Pittaulis Liquor License Case,* 444 Pa. 243, 248, 282 A. 2d 388, 390 (1971), quoting with approval from *Obradovich Liquor License Case,* 386 Pa. 342, 345-46, 126 A. 2d 435, 436-37 (1956), our Supreme Court stated : " 'In the initial grant of a license the *only* matters to be considered by the Board are the fitness of the applicant, whether he alone is pecuniarily interested, whether the premises meet the requirements of the Code, and whether the hotel or restaurant for which the license is applied comes within the definitions of those terms in Section 102 of the Code. A license may not be refused on grounds not embraced in the statute.' "

Here the applicant was acknowledged to be of good character with financial ability and able to fulfill the Code requirements. Furthermore, the record does not support the Board's finding that approval of Paxon's application would be detrimental to the welfare, health, peace and morals of the neighborhood within a radius of five hundred feet. *The record discloses that no person lives within five hundred feet of the premises sought to be licensed.* A junior high school is located seven-tenths of a mile from the country club boundary. An

elementary school is located 2500 feet in a direct line from the clubhouse and the school property is separated from the golf course property by a ten-foot cyclone fence. One going by highways from the school to the clubhouse would travel about two and one-half miles. The nearest church to the clubhouse in question is one-half mile.

The protestants' only assertion, other than the undesirability of man's consuming spirited liquors, bearing on the adverse effects on the neighborhood within a radius of five hundred feet was that patrons of Paxon, upon leaving its premises, would have to drive their automobiles over the Paxon Hollow Road and, in doing so, would create a dangerous condition for other members of the public traveling this road.

We hold that there is no legal correlation between the availability of alcoholic beverages and dangerous driving per se, and the evidence in this record is insufficient to show that the granting of the restaurant license sought here would be detrimental to the public traveling a highway within a radius of five hundred feet of Paxon's clubhouse. *See Caterisano Appeal,* 92 Montg. Co. L. R. 107 (1969).

In *Tate Liquor License Case,* 196 Pa. Superior Ct. 193, 201, 173 A. 2d 657, 661 (1961), the Superior Court pertinently stated the following: "Although there are people who believe that the issuance of all licenses is detrimental, and although we have said that the liquor business is unlawful except as permitted by statute, Tahiti Bar, Inc. Liquor License Case, 186 Pa. Superior Ct. 214, 216, 142 A. 2d 491 (1958), nevertheless, the Commonwealth provides by statute for the issuance of liquor licenses. By doing so, the legislature established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood, but only when the nature of the neighborhood and the nature of

the place to be licensed are such that the issuance would be detrimental. The board could not, as the court below feared, refuse all licenses in neighborhoods with inhabitants within 500 feet of the place proposed to be licensed. If the board acts arbitrarily, capriciously or in violation of positive law, it will be called to account for its defection."

Section 404 of the Liquor Code, Act of April 12, 1951, P. L. 90, as amended by the Act of September 2, 1971, P. L. 429 (Act 103), §1, 47 P.S. §4-404, provides that nothing therein contained shall "prohibit the board from issuing at any time a new license for an airport restaurant, or municipal golf course, as defined in section 461. . . ."

Section 461(e) of the Liquor Code was amended by Act 103, §6, 47 P.S. §4-461, and now reads as follows: "(e) 'Municipal golf course' as used in this section shall mean the restaurant facilities at any municipal golf course open for public accommodation, which are owned or operated directly or through lessees by a county, municipality or a municipal authority, severally or jointly with any other county, municipality or municipal authority, including any such restaurant facilities at any municipal golf course situate in a municipality where by vote of the electors the retail sale of liquor and malt and brewed beverages is not permitted."

This addition to the Liquor Code specifically carves out an exception from the impact of Section 472, 47 P.S. §4-472, which provides for local option to determine the will of the electors with respect to the granting of liquor licenses to hotels, restaurants and clubs.[1]  We

---

[1] Since the constitutionality of Section 461(e), 47 P.S. §4-461(e), has not been raised in this appeal and was not the basis of the Board's or lower court's decisions, we will not consider that question here. *See Commonwealth v. Smith*, 409 Pa. 521, 187 A. 2d 267 (1963). Orderly judicial procedure requires that nothing more be passed upon by a court than the justiciable question posed for its

conclude that Paxon falls totally within the definition set forth in Section 461(e), 47 P.S. §4-461(e), and therefore the Board erred, as a matter of law, in concluding that it was prohibited from issuing Paxon a new license.

The language of the section in question, Act of September 2, 1971, P. L. 429, §6, 47 P.S. §4-461(e), is clear and unequivocal and includes restaurant facilities at *any* municipal golf course open for public accommodation which are owned or operated directly or through lessees by a county, municipality or a municipal authority[2] *or* jointly with *any other* county, municipality or municipal authority.

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Statutory Construction Act of 1972, Act of December 6, 1972, P. L.    , No. 290, 1 Pa. S. §1921(b). Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision. Statutory Construction Act of 1972, 1 Pa. S. §1933.

Applying these two accepted rules of construction to Sections 461(e) and 472 of the Liquor Code, we can-

---

decision. *Robinson Township School District v. Houghton*, 387 Pa. 236, 128 A. 2d 58 (1956).

[2] The amendatory act uses the word "severally" which means "separately", "distinctly", "apart from others". The Attorney General of Pennsylvania, in an opinion to the Board, the reasoning of which was followed by the Board and the lower court, overlooked the word "severally" and incorrectly reached the conclusion that the exception carved out by Section 461(e) only applied "in cases where municipal golf courses are owned jointly by two or more municipalities."

not conclude other than that the Legislature intended Section 461(e) to be an exception to the general provisions of Section 472.[3]

We have carefully read and reread the record and are convinced that the Board's opinion was an abuse of administrative discretion. The Board reached its conclusion in this case by an overriding and misapplication of the facts and the law. *Manns Liquor License Case,* 207 Pa. Superior Ct. 340, 217 A. 2d 848 (1966). Its constant awareness of the protestants and the reliance on the opinion of the Attorney General undoubtedly explains the Board's conclusion, but these do not save the Board's ruling from being an abuse of discretion when, as here, the record is devoid of supporting evidence and the Attorney General's opinion is in error.

The order of the Court of Common Pleas of Delaware County is reversed, and it is directed that the Pennsylvania Liquor Control Board approve the application of Paxon Maymar, Inc., for a restaurant liquor license.

---

[3] This conclusion is fortified by a comparison of the Act of September 25, 1969, P. L. 233, §2, which uses the words "shall not include", with the Act of September 2, 1971, P. L. 429, §6, which uses the word "including" in reference to restaurant facilities at a municipal golf course in a dry municipality.